# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED

JAN 1 6 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.   **19MJ0195**
)
Black LG cellular telephone )
IMEI 355380-09-137317-2 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachement A-3, incorporated herein by reference

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-3, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. 841(a)(1);846 | Possession of Methamphetamine with Intent to Distribute;Conspiracy to do same; |
| Title 18 U.S.C. 922(g)(1); 922 (a)(1)(A) | Felon in Possession of a Firearm |

The application is based on these facts:
See attached affadavit of Special Agent Chad Joseph

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Chad Joseph, Special Agent ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/16/19

City and state: San Diego, California

Hon. Linda Lopez United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Chad D. Joseph, being duly sworn, depose and state:

## INTRODUCTION

1. I make this affidavit in support of an application for a search warrant in furtherance of a firearms possession and narcotics distribution investigation conducted by The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Special Agents for the following cellular phone:

Black LG cellular telephone

IMEI 355380-09-137317-2

(**Target Device #3**)[1]

2. Officers seized **Target Device #3** on December 17, 2018 from Jeffrey Teodoro Ramirez's (RAMIREZ) person after he was arrested on a Federal Arrest Warrant 18MJ6283 at the San Diego County Superior Court, Vista Courthouse. **Target Device #3** is currently being held as evidence at the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) office located at 5901 Priestly Drive, Suite 304, Carlsbad, California, 92008, in the Southern District of California.

3. Probable cause exists to believe that **Target Device #3** contains evidence relating to violations of Title 18, United States Code, Sections 922(g)(1) and 922(a)(1)(A) and Title 21 United States Code, Sections 841 and 846.4. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I believe the items to be seized set forth in Attachment B-3 will be found in the items to be searched as described in Attachment A-3. These items may be or lead to evidence of the violations described above.

//
//

---

[1] See separate cover for applications for a search warrants regarding Target Device #1 and Target Device #2.

1

## TRAINING AND EXPERIENCE

5. I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, and Section 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, and Section 2516.

6. I am a Special Agent of the Bureau of Alcohol Tobacco Firearms and Explosives (ATF), and have been so employed since May 2018. I am currently assigned to the Los Angeles Field Division, San Diego IV Field Office, North County Regional Gang Task Force (NCRGTF). Prior to joining the ATF, I was a Federal Air Marshal, from February 2006 until May 2018. I have received 28 weeks of training at the ATF Academy in Glynco, Georgia. During that training, I received instruction regarding a wide variety of investigative techniques that are commonly used in support of a wide range of the ATF's investigative priorities. The training included instruction regarding the use of sources, electronic surveillance techniques, law enforcement tactics, search and seizure laws and techniques, surveillance, forensic techniques, interviewing, and a variety of other subjects.

7. During my law enforcement career, I have received formal training in federal firearms laws, narcotics, and gang investigations, to include investigations on persons prohibited from possessing firearms. I have been trained in various investigative techniques, including physical and stationary surveillance, informants and cooperating sources, court authorized interceptions, pen register/trap and trace devices, telephone toll analysis, undercover operations, physical searches, mail covers, and electronic examinations of evidence. In addition to my formal training, I have received on the job training in the manner in which narcotics are packaged, consumed, transported and sold. I have spoken to narcotics officers, drug users, drug dealers, and informants regarding the manner in which narcotics transactions are commonly carried out, how narcotics are

packaged for sale, and how drug dealers store, conceal, sell, smuggle, and transport narcotics.

8. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics traffickers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities. Conspiracies involving narcotics trafficking generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messages, emails, instant messages, social networking messages, and phone numbers of co-conspirators.

9. I also know that narcotics traffickers sometimes maintain lists of clients that have drug debts, often referred to as "pay and owe" sheets. These debt lists are sometimes maintained on electronic files and stored on electronic storage devices.

10. In preparing this affidavit, I have conferred with other law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

11. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in the distribution of firearms and controlled substances, and all the facts and opinions set forth in this affidavit, I submit the following:

   a. Firearm and narcotics dealers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

   b. Firearm and narcotics dealers believe that cellular telephones provide greater insulation and protection against court-ordered wiretaps, and they believe in

3

    the inability of law enforcement personnel to simultaneously track the originating and destination telephone numbers of calls placed to and from their cellular telephones.

  c. Firearm and narcotics dealers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

  d. Firearm and narcotics dealers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

  e. Firearm and narcotics dealers will use cellular telephones to synchronize an exact drop off and/or pick up time of their illegal cargo.

  f. Firearm and narcotics dealers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked police units.

  12. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a firearm and narcotics trafficker's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

  13. Based upon my training and experience as a Federal Officer, and consultations with law enforcement officers experienced in firearms and narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and

location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone.  Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yield evidence:

    a.    tending to indicate efforts to illegally acquire, possess, and / or deal firearms and/ or narcotics;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the illegal acquisition, possession, and / or dealing of firearms and/ or narcotics;

    c.    tending to identify co-conspirators, criminal associates, or others involved in the illegal acquisition, possession, and / or dealing of firearms and/ or narcotics;

    d.    tending to identify travel to or presence at locations involved in the illegal acquisition, possession, and / or dealing of firearms and/ or narcotics;

    e.    tending to identify the user of, or persons with control over or access to, the **Target Device #3**; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

14.    The facts set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews; my review of documents related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; conversations with other

investigators and agents experienced in controlled substance investigations, and information gained through my training and experience. All the dates, times, and amounts listed in this affidavit are approximate and all dates refer to the current calendar year and all times refer to Pacific Standard Time (PST) unless specified otherwise. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for search warrants, it does not set forth each and every fact that I or others have learned during the course of this investigation. Instead, it contains only those facts believed to be necessary to establish probable cause.

## FACTS SUPPORTING PROBABLE CAUSE

15. On December 5th, 2018, at approximately 6:36 p.m., Oceanside Police Department uniformed Gang Suppression Unit officers Ted Weise and Jorge Sanchez were dressed in full uniform and driving an unmarked grey patrol vehicle. In the area of Oceanside Blvd and El Camino Real in the city of Oceanside, California, Officers Weise and Sanchez observed a black Lincoln sedan with California plate 6TZL240 traveling westbound on Oceanside Blvd with the third brake light not functioning properly in violation of CVC 24252(a) - lighting equipment maintained in good working order. The officers activated their emergency light and initiated a traffic stop. The sedan came to a stop in Terrance Gardens Mobile home parking lot located 3030 Oceanside Blvd. The officers made contact with the occupants of the sedan, driver RAMIREZ, and front passenger Jessica Castaneda.

16. While speaking with RAMIREZ, Officer Sanchez observed a green leafy substance residue on his pants, which was consistent with marijuana. Officer Sanchez asked RAMIREZ if he was "about to roll a blunt", to which RAMRIEZ laughed. Officer Sanchez asked RAMIREZ how much marijuana was in the car, at which point RAMIREZ reached with his left hand to the driver side door panel and produced a plastic bag of green leafy substances which was consistent with the color and texture of marijuana (later

determined to be approximately 2.7 grams). Prior to being ordered out of the car, officers observed RAMIREZ place Target Device #1 on the dashboard of his car.

17. A search of the vehicle produced a cylindrical glass pipe with a bulbous end on the floorboard of the driver side, immediately recognized to be drug paraphernalia. A Glock magazine containing eight (8) unexpended Hornady 9mm pistol rounds was found in the center console. A note pad with RAMIREZ's name written on it, Target Device #2, and one (1) unloaded 9mm pistol were recovered from a backpack on the backseat of the vehicle. The pistol was constructed from a Polymer80 unfinished lower receiver bearing no serial number, with Glock slide bearing the serial number PLC801. Also found in the backpack was a large plastic bag containing a white crystal like substance, later determined to be 203.1 grams net weight of Methamphetamine, an envelope containing $3650 of different denominations of United States currency and one functioning digital scale with white powder residue consistent with methamphetamine were recovered from the vehicle. RAMIREZ was subsequently arrested and booked into the Vista Detention Facility without incident.

18. On December 13, 2018, Federal Arrest Warrant 18MJ6283 was issued for RAMIREZ for violating 18 U.S.C. § 922(g)(1) and 21 U.S.C. § 841 (a)(1).

19. On December 17, 2018 at approximately 9:00 a.m., ATF Special Agents (SAs) Austin Sailor and Scott Brahin arrested RAMIREZ for the aforementioned Federal Arrest Warrant at the San Diego County Superior Court, Vista Courthouse located at 325 South Melrose Drive, Vista, California. ATF personnel handcuffed RAMIREZ behind his back without incident inside the courthouse. At the time of his arrest, RAMIREZ was in possession of **Target Device #3**. SA Sailor recovered RAMIREZ's cellular telephone, **Target Device #3**, from his suit pocket and retained **Target Device #3** as evidence.

20. Based upon my experience and training, consultation with other law enforcement officers experienced in illegal acquisition and possession of firearms and

7

narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the illegal firearms possession and narcotics trafficking activities of RAMIREZ and his co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, email messages, messages and posts from social networking sites like Facebook, pictures and other digital information are stored in the memory of the cellular telephone described herein.

## SEARCH METHODOLOGY

21. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process

and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

22. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

23. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## GENUINE RISKS OF DESTRUCTION

24. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, electronically stored data can be permanently deleted or modified by users possessing basic computer skills. In this case, only if the subject receives advance warning of the execution of this warrant, will there be a genuine risk of destruction of evidence.

## PRIOR ATTEMPTS TO OBTAIN INFORMATION

25. The United States has not attempted to obtain this information by other means.

## CONCLUSION

26. Based on all of the facts and circumstances described above, there is probable cause to conclude that RAMRIEZ used the **Target Device #3** to facilitate the offenses of distributing methamphetamine. **Target Device #3** was likely used to facilitate the offenses by transmitting and storing data, which constitutes evidence of violations 18 U.S.C. §

9

922(g)(1) and 922(a)(1)(A); U.S.C. § 841, Distribution of a Controlled Substance; and 21 U.S.C. § 846, Conspiracy to Distribute Controlled Substances.

27. Because the **Target Device #3** was seized unexpectedly from Ramirez during a traffic stop and has been stored in a secure location, there is probable cause to believe that evidence of illegal activity committed by RAMIREZ continues to exist on the **Target Device #3**.

28. Based upon my experience and training, consultation with other agents in narcotics investigations, consultation with other sources of information, and the facts set forth herein, I know that the items to be seized set forth in Attachment B-3 are likely to be found in the property to be searched described in Attachment A-3. Therefore, I respectfully request that the Court issue a warrant authorizing me, a Special Agent with The Bureau of Alcohol, Tobacco, Firearms and Explosives, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachment A-3, and seize the items listed in Attachment B-3.

_____
Chad Joseph, Special Agent
Bureau of Alcohol, Tobacco, Firearms,
and Explosives

Subscribed and sworn to before me this 16 day of January, 2019.

_____
The Honorable Linda Lopez
United States Magistrate Judge

10

# ATTACHMENT A-3

## PROPERTY TO BE SEARCHED

The following property is to be searched:

    Black LG cellular telephone

    IMEI 355380-09-137317-2

    **(Target Device #3)**

Target Device #3 is currently in the possession of the Bureau of Alcohol, Tobacco, Firearms and Explosives at 5901 Priestly Drive, Suite 304, Carlsbad, California, 92008, in the Southern District of California.

# **ATTACHMENT B-3**

## ITEMS TO BE SEIZED

The following evidence to be searched for and seized pertains to violations of Title 18, United States Code Sections 922(g)(1) and 922(a)(1)(A) and Title 21, United States Code Sections 841 and 846:

1. Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:

    a.  tending to indicate efforts to illegally acquire, possess, and / or deal firearms and/ or narcotics;

    b.  tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the illegal acquisition, possession, and / or dealing of firearms and/ or narcotics;

    c.  tending to identify co-conspirators, criminal associates, or others involved in the illegal acquisition, possession, and / or dealing of firearms and/ or narcotics;

    d.  tending to identify travel to or presence at locations involved in the illegal acquisition, possession, and / or dealing of firearms and/ or narcotics;

    e.  tending to identify the user of, or persons with control over or access to, the **Target Device #3**; and/or

    f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.